## SIMON *v.* CRAFT.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 191.   Argued March 12, 1901.—Decided May 27, 1901.

The essential elements of due process of law are notice and opportunity to defend, and in determining whether such rights are denied, the court is governed by the substance of things and not by mere form.

A person charged with being of unsound mind is not denied due process of law by being refused an opportunity to defend, when, in fact, actual notice was served upon him of the proceedings, and when, if he had chosen to do so, he was at liberty to make such defences as he deemed advisable.

The due process clause in the Fourteenth Amendment to the Constitution does not necessitate that the proceedings in a state court should be by a particular mode, but only that there shall be a regular course of proceedings, in which notice is given of the claim asserted, and an opportunity afforded to defend against it.

This court accepts as conclusive the ruling of the Supreme Court of Alabama that the jury which passed upon the lunacy proceeding considered in this case was a lawful jury, that the petition was in compliance with the statute, and that the asserted omissions in the recitals in the verdict and order thereon were at best but mere irregularities which did not render void the order of the state court, appointing a guardian.

THIS is a writ of error to review a judgment of the Supreme

Court of Alabama affirming a judgment in favor of John N. Craft, the defendant in error herein. The judgment thus affirmed was entered by a lower state tribunal upon a verdict rendered on the second trial of an action in ejectment, wherein Jetta Simon, plaintiff in error herein, was plaintiff.

In brief, the facts are as follows: In 1889, Jetta Simon, a widow, resided in Mobile, Alabama, with several minor children. She lived at that time in a house of which she was the owner, being the real estate affected by the action of ejectment heretofore referred to. On January 30, 1889, Ralph G. Richard filed in the probate court of Mobile County, Alabama, a petition for an inquisition of lunacy as to Mrs. Simon. In this petition it was represented that Richard was a friend of Mrs. Simon and of her family; that she was of the age of forty-nine years, a resident of Mobile, of unsound mind and incapable of governing herself or of conducting and managing her affairs. Upon this petition an order was entered for a hearing on February 6, 1889, and that a jury " be drawn, as the law directs, for the trial of this issue." The order also provided that a writ issue to the sheriff, " requiring him to take the said Jetta Simon, so that he have her in this court to be presented at said trial, if consistent with the health and safety of said Simon." The writ issued. Therein was stated the substance of the allegations of the petition, and that the order had been entered appointing February 6, 1889, "for hearing said petition and for the due trial, thereof." The command of the writ was that—

" If it be consistent with the health and safety of said Jetta Simon, you are hereby required to take her body, so that you may have her in said court, to be present at said trial, and before the jury then to be empanelled to make said inquisition.

" And have you then and there this writ with your return thereon as to how you have executed the same."

The writ was duly returned with the following endorsement:

" Received January 31st, 1889, and on the same day I executed the within writ of arrest by taking into my custody the within-named Jetta Simon and handing her a copy of said writ, and as it is inconsistent with the health or safety of the within-named Jetta Simon to have her present at the place

of trial, and on the advice of Dr. H. P. Hirshfield, a physician, whose certificate is hereto attached, she is not brought before the honorable court.

"W. H. HOLCOMBE, *Sheriff.*

"Mobile, February 5th, 1889. By WM. H. SHEFFIELD, *D. S.*"

The certificate referred to reads as follows:

"MOBILE, ALA., *Jan. 30th,* 1889.

"To the Sheriff of Mobile County, Ala.:

"I, H. P. Hirshfield, a regular physician, practicing in Mobile County, Ala., hereby certify that I am acquainted with Mrs. Jetta Simon, and have examined her condition on yesterday and find that she is a person of unsound mind, and it would not be consistent with her health or safety to have her present in court in any matter now pending.

"H. P. HIRSHFIELD, M. D."

One Vaughan was appointed by the probate court the guardian *ad litem* of Mrs. Simon "in the matter of the petition to inquire into her lunacy." The appointment was accepted, and the guardian filed in said proceeding an answer averring "that he wholly denies all the matters and things stated and contained in said petition, and requires strict proof to be made thereof according to law." Thereupon a hearing was had before a jury, who returned a verdict that Mrs. Simon was "of unsound mind." The probate court then entered the following order or decree:

"JETTA SIMON, Lunatic.

"STATE OF ALABAMA, ⎱ Probate Court of said County,
   *Mobile County.* ⎰

"February 6th, 1889.

"This being the day appointed, by reference to an entry thereof made upon the minutes of the court on the 30th of January, 1889, for the hearing of the petition of Ralph G. Richard, filed, alleging the lunacy of the said Jetta Simon and praying an inquisition thereof, and it being shown that it would not be consistent with the health and safety of said lunatic to bring her into court at this time, and it appearing that due process

had been served upon said lunatic notifying her of this proceeding, now comes the said Richard and a jury of good and lawful men, who reside in the county of Mobile, and who, having been summoned, to wit, John Pollock, Jr., and eleven others, who, having heard the evidence, the arguments of counsel, and the charge of the court in the premises, and being first duly tried, empanelled and sworn well and truly to make inquisition of the facts alleged in said petition and a true verdict to render according to the evidence, upon their oath say, 'We, the jury, find Mrs. Jetta Simon to be of unsound mind.'

"It is ordered, adjudged and decreed by the court that said petition and all other proceedings thereon, together with the aforesaid verdict of said jury declaring the said Jetta Simon a lunatic, be recorded."

Subsequently, on February 11, 1889, Richard was duly appointed guardian of the estate of Mrs. Simon, and regular proceedings were had by which, under authority of the court, a sale of the real estate in question was ordered to be made for the payment of the debts of Mrs. Simon and for the support and maintenance of her family. Such sale was had in May, 1889, when Henry J. Simon became the purchaser, who sold the property to John N. Craft, defendant in error herein. In September, 1895, more than six years after the sale to Simon, the action in ejectment heretofore referred to was instituted against one Brown, a tenant of Craft. Craft, as landlord, was subsequently substituted in the stead of Brown. Upon a second trial of the issues joined, the defendant Craft, among other evidence, introduced the record of the proceedings in the probate court upon the inquisition of lunacy, to which reference has already been made, and the record of the subsequent proceedings resulting in the sale to Henry J. Simon. Objection to the introduction of such records was made upon specified grounds, all of which are stated in the margin.[1] The objec-

---

[1] 1st. In that there was no process issued notifying Jetty Simon to be present at the trial of the inquest of lunacy that was held.

2d. In that no provision was made in or by said proceedings whereby said Jetty Simon might be present at the inquest of lunacy that was held.

3d. In that the writ of arrest issued for the body of Jetty Simon was

tions were overruled and the record allowed to be read in evidence, to which action of the court exception was duly taken. The approval by the Supreme Court of Alabama of this ruling is what is here complained of.

The opinion of the Supreme Court of Alabama reversing the judgment entered on a verdict in favor of Mrs. Simon rendered at the first trial of the action of ejectment is contained in 118 Alabama, 625. The judgment entered in favor of Craft upon the second trial was affirmed upon the authority of the previous opinion.

*Mr. Harry T. Smith* for plaintiff in error. *Mr. Gregory L. Smith* was on his brief.

*Mr. H. Pillans* for defendant in error. *Mr. D. P. Bestor* was on his brief.

Mr. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

By subdivision 6 of section 787 of the Civil Code of Alabama of 1886 courts of probate in that State are vested with original jurisdiction over the appointment and removal of guardians for minors and persons of unsound mind. Pertinent provisions of

conditional in form and conferred upon the sheriff the power to determine whether it should be executed or not.

4th. In that the writ of arrest left it to the judgment of the sheriff whether the said Jetty Simon should be allowed to appear at the trial of the inquest of lunacy.

5th. In that the writ of arrest authorized the sheriff to restrain Jetty Simon of her liberty and deprive her of the opportunity to be heard at the inquest of lunacy.

6th. In that the sheriff's return shows that under the writ of arrest he restrained Jetty Simon of her liberty and did not permit her to be present at the trial of the inquest of lunacy.

7th. Because the statute under which Jetty Simon was restrained of her liberty and deprived of her property is in conflict with article V of the amendments to the Constitution of the United States, which provides, "Nor be deprived of life, liberty, or property without due process of law," and in conflict with article XIV of the amendments to said Constitution:

the statutes of Alabama relating to the mode of appointment
of guardians of persons of unsound mind, contained in said
Civil Code, are excerpted in the margin.[1]

In the proceedings to inquire into the sanity of Mrs. Simon
the writ which issued to the sheriff was evidently based upon
the following clause of section 2393 of the Civil Code of 1886:

---

1a. In that it authorizes a citizen to be deprived of his or her liberty
without due process of law.

2a. In that it authorizes a citizen to be deprived of his or her property
without due process of law.

8th. Because said proceedings in the probate court are irrelevant and im-
material to any issue in the cause.

[1] Sundry sections of Part 2, Title 5, Chapter 4, of the Civil Code of Ala-
bama of 1886, pp. 535, et seq. :

"2390 (2753, 2754). Appointment.—The court of probate has authority,
and it is a duty to appoint guardians for persons of unsound mind residing
in the county, having an estate, real or personal, and of persons of unsound
mind residing without the State, having within the county property requir-
ing the care of a guardian, under the limitations, and in the mode herein-
after prescribed.

"2391. Guardian not appointed until after inquisition.—A guardian for a
person alleged to be of unsound mind, residing in the county, must not be
appointed until an inquisition has been had and taken as hereinafter di-
rected.

"2392 (2757). Inquisition; proceedings.—Upon the petition of any of the
relatives or friends of any person alleged to be of unsound mind, setting
forth the facts and name, sex, age and residence of such person, accom-
panied by an affidavit that the petitioner believes the facts therein stated
to be true, the court of probate of the county in which such person alleged
to be of unsound mind resides, must appoint a day, not more than ten days
from the presentment of such petition, for the hearing thereof.

"2393 (2758). Jury summoned; writ of arrest.—The judge of probate
must issue a writ directed to the sheriff, commanding him to summon
twelve disinterested persons of the neighborhood for the trial thereof,
and also issue subpœnas for witnesses, as the parties may require, return-
able to the time of trial; he must also issue a writ directed to the sheriff
to take the person alleged to be of unsound mind, and, if consistent with
his health or safety, have him present at the place of trial.

"2394 (2759). Oaths of jurors; vacancies filled.—At the time set for the
trial, if good cause be not shown for continuance, the jury must be im-
panelled and sworn well and truly to make inquisition of the facts alleged
in the petition, and a true verdict render according to the evidence. If
any of the jurors are excused from serving, fail to attend, or are set aside
for any cause, their places may be supplied from the bystanders.

"2393. The judge of probate . . . must also issue a writ directed to the sheriff to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial."

The invalidity of the proceedings in the inquisition of lunacy which formed the basis of the subsequent proceedings for the sale of the property of Mrs. Simon is in substance predicated on the contention that the writ directed to the sheriff authorized that official to determine whether it, was consistent with the health and safety of Mrs. Simon to be present at the trial of the question of her sanity ; that the sheriff decided this question against her, and she was detained in custody and not allowed to be present at the hearing on the inquisition. The latter claim, however, is founded upon the return endorsed by the sheriff on the writ directed to him. At the trial below there

---

"2395 (2760). On verdict of insanity, papers filed, and guardian appointed.—If the jury find by their verdict that the facts alleged in the petition are true, and that such person is of unsound mind, the court must cause the petition and all the proceedings thereon to be recorded, and appoint a suitable guardian of such person.

\*       \*       \*       \*       \*       \*       \*       \*

"2396 (2761). Proceedings when person of unsound mind is confined in asylum.—If the person alleged to have been of unsound mind is a resident of the county, and is at the time of the application confined in an hospital or asylum within or without the State, the inquisition may be had or taken without notice to him, but on the filing of the application the court must appoint a guardian *ad litem* to represent and defend for him; it is the duty of such guardian by answer to put in issue the facts stated in the application, and to employ counsel at the expense of such person of unsound mind to appear and defend.

"2397 (2804). Application for revocation of guardianship.—At any time after the inquisition the person ascertained to be of unsound mind, by himself or by next friend, may apply in writing to the court of probate for a revocation of the proceedings against him, and of the letters of guardianship; the application to be accompanied by the certificate in writing of two physicians or of two other competent persons, stating that after examination of such person they believe him to be of sound mind.

"2398 (2804). Proceedings on application.—On the filing of such application the court must appoint a day for the hearing thereof, not more than ten days thereafter, and the guardian and the person at whose instance the inquisition was had and taken must be cited to appear and show cause against it.

was no offer to prove, by any form of evidence, that Mrs. Simon was in fact of sound mind when the proceedings in lunacy were instituted, or that she desired to attend, and was prevented from attending, the hearing, or was refused opportunity to consult with and employ counsel to represent her. The entire case is thus solely based on the inferences which are deduced, as stated, from the face of the return of the sheriff. And upon the assumptions thus made it is contended that the statute as well as the proceedings thereunder were violative of the clause of the Fourteenth Amendment to the Constitution of the United States, which forbids depriving any one of life, liberty or property without due process of law.

It is not seriously questioned that the Alabama statute provided that notice should be given to one proceeded against as being of unsound mind of the contemplated trial of the question of his or her sanity. Indeed, it would seem that it was not urged before the Supreme Court of Alabama that the statutes

---

"2399 (2805, 2806). Contest of application.—If the guardian or person at whose instance the inquisition was had and taken appear and deny the allegations of the application, the court must appoint a day for the trial of such contest, not more than ten days thereafter, and must cause a jury to be summoned for the trial thereof, and the like proceedings must be had as upon the original inquisition; or if there be no contest of the allegations of the application, and the court is satisfied of the truth thereof, a decree must be entered revoking the proceedings on the inquisition and the guardianship, and declaring that the ward must be restored to the custody and management of his estate.

"2400 (2807). Judgment on contest; costs thereof.—If on the trial of the contest, the jury find the facts stated in the application to be true, the court must enter a decree revoking the proceedings on the inquisition and the guardianship, and declaring that the ward must be restored to the custody and management of his estate, and must adjudge the costs as is just and equitable, but if the verdict of the jury negatives the facts stated in the application, a judgment of dismissal at the cost of the applicant or of the next friend must be entered.

"2401 (2803). Revocation on application of guardian.—If, at any time after his appointment, the guardian becomes satisfied that the ward has been restored to sanity, and is capable of managing his estate, and the judge of probate is of opinion, from the proof and the facts stated, that such representation is correct, he must make an order that the guardian be discharged, and that the estate of the ward be restored to him.

of that State failed to provide for notice, and that court assumed in its opinion that no question of that character was presented. As a matter of fact, a copy of the writ which issued and which embodied a notice of the date of the hearing of the proceedings in lunacy is shown by the record to have been actually served on Mrs. Simon. As early as 1870 the Supreme Court of Alabama in *Fore* v. *Fore*, 44 Alabama, 478, 483, held that the service of the writ upon a supposed lunatic was the notice required by the statute and brought the defendant into court, and that if he failed to avail of such matters of defence as he might have, he must suffer the effect of his failure to do so.

We excerpt in the margin the portion of the opinion of the Supreme Court of Alabama which dealt with the objection that Mrs. Simon was deprived of opportunity to be heard.[1]

The contention now urged is that notice imports an opportunity to defend, and that the return of the sheriff conclusively established that Mrs. Simon was taken into custody and was hence prevented by the sheriff from attending the inquest or defending through counsel if she wished to do so in consequence of the notice which she received. It seems, however, manifest —as it is fairly to be inferred the state court interpreted the

---

[1] "The second ground of objection is that the appellee had no opportunity to be heard at the inquisition. This objection is based upon the character and wording of the writ directed to the sheriff. The provision of the statute is that the judge must 'issue a writ, directed to the sheriff, to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial.' The writ that issued, after setting out the facts averred in the petition, proceeded: 'Now, therefore, if it be consistent with the health and safety of said Jetta Simon, you are hereby required to take her body so that you may have her in said court,' etc. The statute is that the sheriff be directed to take her body, and, if consistent with health, etc. By the statute it is made the duty of the sheriff to take the body without condition, and, if consistent with health and safety, to have her present at the trial. The writ issued, directed to the sheriff, 'if consistent with health and safety, to take her body,' etc. The return of the sheriff shows that the writ was executed in accordance with the statute. It is: 'I executed the within writ of arrest by taking into my custody the within-named Jetta Simon and handing a copy of said writ, and as it is inconsistent with the health or safety . . . to have her at the place of trial . . . she is not brought before the court.' Technically the writ of the judge was not accurately correct. Its meaning, however, is

statute—that the purpose in the command of the writ, "to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial," was to enforce the attendance of the alleged *non compos*, rather than to authorize a restraint upon the attendance of such person at the hearing. In other words, that the detention authorized was simply such as would be necessary to enable the sheriff to perform the absolute duty imposed upon him by law of bringing the person before the court, if in the judgment of that officer such person was in a fit condition to attend, and hence it cannot be presumed, in the absence of all proof or allegation to that effect, that the sheriff in the discharge of this duty, after serving the writ upon the alleged lunatic, exerted his power of detention for the purpose of preventing her attendance at the hearing, or of restraining her from availing herself of any and every opportunity to defend which she might desire to resort to, or which she was capable of exerting. The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were denied we are governed by the substance of things and not by mere form. *Louisville & Nashville Railroad Co.* v. *Schmidt,* 177 U. S. 230. We cannot, then, even on the assumption that Mrs. Simon was of sound mind and fit to attend the hearing, hold that she was denied due process of law by being refused an opportunity to defend, when, in fact, actual notice was served upon her of the proceedings, and when, as we construe the statute, if she had chosen to do so, she was at liberty to make such defence as she deemed advisable. The view we take of the statute was evidently the one adopted by the judge of the probate court, where the proceedings in lunacy were heard, since that court, upon the return of the sheriff, and the failure of the alleged lunatic to appear, either in person or by counsel, in order to protect her interests, entered an order appointing a guardian *ad litem* "in the matter of the petition to inquire into her lunacy;" and

---

evident. The sheriff's return was complete and regular in every respect. We do not doubt she was brought into the court in the manner prescribed by statute, and that she was subject to its jurisdiction. The second objection cannot be sustained." 118 Alabama, 636.

an answer was filed by such guardian denying all the matters and things stated and contained in the petition, and requiring strict proof to be made thereof according to law.

It is also urged as establishing the nullity of the appointment of a guardian of the estate of Mrs. Simon that the proceedings failed to constitute due process of law, because: 1, they were special and statutory, and the petition failed to state sufficient jurisdictional facts: 2, a jury was not empanelled as provided by law: and 3, there was no finding in the verdict of the jury or the order entered thereon ascertaining and determining all the facts claimed to be essential to confer jurisdiction to appoint a guardian. But the due process clause of the Fourteenth Amendment does not necessitate that the proceedings in a state court should be by a particular mode, but only that there shall be a regular course of proceedings in which notice is given of the claim asserted and an opportunity afforded to defend against it. *Louisville & Nashville Railroad Co.* v. *Schmidt,* 177 U. S. 230, 236, and cases cited. If the essential requisites of full notice and an opportunity to defend were present, this court will accept the interpretation given by the state court as to the regularity under the state statute of the practice pursued in the particular case. Tested by these principles, we accept as conclusive the ruling of the Supreme Court of Alabama that the jury which passed on the issues in the lunacy proceeding was a lawful jury, that the petition was in compliance with the statute, and that the asserted omissions in the recitals in the verdict and order thereon were at best but mere irregularities which did not render void the order of the state court, appointing a guardian of Mrs. Simon's estate.

*Judgment affirmed.*