OLGA TISCHER THYBOE, ETC., Petitioner, *v*. OTTO TISCHER VOIGHT, Respondent.

No. 97.   Argued April 6, 1931.—Decided April 29, 1931.

*F. H. Dexter* and *R. Díaz Cintrón* for petitioner.  *E. Igaravídez, E. García del Rosario,* and *J. Martínez Dávila* for respondent.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

Olga Tischer de Thyboe, on behalf of Emilia Voight de Tischer, has filed an application for a writ of habeas corpus, in which it is substantially alleged that the said Emilia Voight is illegally held in custody by Otto Tischer and restrained of her liberty; that such illegal custody originated in an order made by the District Court of San Juan on August 28, 1930, in which the said lady was declared to be incapacitated and Otto Tischer Voight appointed her guardian for the management of her property, on motion of Otto,

Herbert, Walter, Carl Julius, and Hertha Tischer Voight, without notice of said motion having been served on her other daughters, the petitioner herein and Clara Tischer; that by virtue of the said order Otto Tischer Voight has seized the management of the estate of Emilia Voight, and has deprived her of her personal liberty and prevented her from having any family intercourse with the petitioner and from communicating with her friends; that the order giving rise to such deprivation of liberty is null and void because at the time it was made Emilia Voight was not incapacitated but had only suffered an attack of partial paralysis which did not affect her mind, and because the order was made without said Emilia Voight having been notified of the proceeding or heard therein or having her day in court, without due process of law, and in violation of the Constitution of the United States and of the Organic Act of Puerto Rico; that besides there is pending in this Court a certiorari proceeding, in connection with the order declaring the incapacity of Emilia Voight and a subsequent order opening the proceeding on motion of the Department of Justice.

The writ was issued directed to Otto Tischer Voight commanding him to produce in court Emilia Voight de Tischer and to state the grounds for detaining the said lady and depriving her of her liberty.

The parties appeared on the return day but Tischer failed to produce Emilia Voight as she was unable to attend because of illness.

Otto Tischer filed a verified return in which he set up that Emilia Voight was suffering from partial paralysis which made it difficult for her to walk and to climb stairs; that it is not true that she is deprived of her liberty or detained in any way by the respondent, or prevented from taking an oath or signing any document presented for her signature, and that she leaves the house whenever she pleases, or whenever the petitioner or anybody else goes for her and takes her out for a ride; that on August 28, 1930, the Dis-

trict Court of San Juan made the order referred to in the application, and declared Emilia Voight to be incapacitated, on the petition of five of her seven legitimate children, and that the guardian has given a bond which has been approved by the court and has taken over the management of the property of the incapacitated person, but that he neither prevents nor restrains the said lady of her personal liberty, or from communicating with her family or friends, and that the petitioner has free access to the house of Emilia Voight and takes her out whenever she pleases; that the guardianship relates only to the management of the estate; the respondent again disclaimed any restriction of the personal liberty of Emilia Voight, made some allegations regarding a will executed by the said lady, and prayed for a dismissal of the writ of habeas corpus.

At the hearing of the case, the petitioner introduced as documentary evidence record No. 12930 of the District Court of San Juan relating to the declaration of incapacity of Emilia Voight and the appointment of Otto Tischer Voight as guardian. In the argument the petitioner reduced her contentions essentially to the following:

(a) Emilia Voight was not served with notice of the application for a declaration of incapacity, and the proceeding was had without such notice.

(b) Emilia Voight was not heard in that proceeding nor was she given an opportunity to make a defense.

Within those two propositions is included the legal contention that the declaration of incapacity was made without due process of law and in violation of the Constitution of the United States and the Organic Act of Puerto Rico.

Really the issue as to the incapacity of Emilia Voight has not been adequately covered, except in what appears from the record introduced in evidence and already referred to. Such practice is, to say the least, hazardous, since one of the allegations of the petition for habeas corpus is that the said lady is not incapacitated, and it seems natural that it should

have been sought to prove such allegation, controverted by Otto Tischer and by the order now being considered.

It appears from the record offered and admitted in evidence:

(1) That five legitimate children of Emilia Voight de Tischer appeared before the District Court of San Juan and alleged that Emilia Voight de Tischer was sick, suffering from softening of the brain, and prayed that she be declared incapacitated to manage her property, and that Otto Tischer be appointed her guardian. This petition was notified to the District Attorney of San Juan on August 6, 1930. No notice appears to have been served on said Emilia Voight de Tischer.

The record contains the testimony of Otto Tischer, Walter Tischer, Dr. Leandro López de la Rosa, and Dr. Luis B. de la Vega. The former two, petitioners in the proceeding, testified that there were living seven children of Emilia Voight, all of full age; that their father had died, and that she was sixty years old; that she owns a house and has some two or three thousand dollars in a bank; that a year ago she suffered a very serious attack of apoplexy from which she partially recovered, but the right-hand side of her body has become paralyzed and she is unable to write; that although she is still able to move she can not exert herself; that as a rule she is mentally normal but at time her ideas are confused; that they do not think she is capable of managing her property; that her parents are dead; that she is a widow, and that Otto Tischer is her eldest son, who has supplied all her needs and looked after her for the last five years, during which time they have lived together. Dr. López de la Rosa testified that Emilia Voight has the right-hand side of her body paralyzed, the left side of her brain being affected; that she is afflicted with softening of the brain and loss of speech, and that he does not think that she is sufficiently conscious, because she can neither communicate, nor speak, nor write; that such a condition is apparently permanent; and that she is more than sixty years old and most likely her condition will get

worse. Dr. de la Vega testified that he had attended Emilia Voight and found her to have one side of her body completely paralyzed and showing symptoms of injury to the brain; that he attended her for fifteen or twenty days and thinks that the injury is permanent and that she is incapacitated to manage her property, and unable to write or speak.

Instead of filing a report, the district attorney wrote on the transcript of the stenographic record the words "No objection" over his signature. This indorsement must be interpreted to mean that he did not object to the declaration sought.

The judge held in his decision that Emilia Voight is suffering from softening of the brain and incapacitated to manage her property. He appointed her son, Otto, as her guardian to act in her behalf in everything relating to her property. The guardian was sworn and an inventory taken. The court fixed the bond at $5,000 which was furnished by the guardian and approved by the court.

It appears from the record that a special district attorney filed a motion to open the case on the ground that Emilia Voight was not incapacitated; but this is not a question to be decided in the present proceeding.

We observe that in the verification of the application subscribed by Olga Tischer de Thyboe nothing is said as to the reason why Emilia Voight did not sign the application and the oath thereto. In our judgment, this should have been stated in the affidavit.

The petitioner cites the decisions in *Chaloner* v. *Sherman*, 242 U. S. 455, and *Simon* v. *Craft*, 182 U. S. 427. In her memorandum she says:

"It has been held by the Supreme Court of the United States that a proceeding to declare a person mentally unsound or incapacitated violates the due process clause of the Constitution if the person against whom such proceeding has been instituted is not notified personally or given an opportunity to be heard."

We have examined the opinion in the case relied on but fail to find therein the precise holding invoked. It seems that the party meant to assert a conclusion similar to that quoted.

We transcribe the following from the syllabus of the case mentioned:

"Omission of the statutes of New York concerning proceedings *de lunatico inquirendo* (Code of Civil Procedure, 1898, pars. 2320, *et seq.*), to provide expressly that notice of and opportunity to be heard at the inquisition shall be afforded to the alleged incompetent, *held*, not violative of the due process clause of the Fourteenth Amendment, it appearing by the decisions of the highest court of the State that the requisite notice and opportunity are otherwise impliedly afforded under the state law."

In the case cited, Chaloner as the party involved was served with notice of the application for the appointment of a commission to inquire as to his mental capacity and of a motion to confirm the inquisition and for the appointment of a commissioner. He could have been present but did not appear. The commission decided that his attendance was unnecessary. It was concluded that the due process of law had been complied with. Thereafter the court accepted the resignation of the commissioner and appointed another, without hearing Chaloner. It was held that the constitutional clause had not been violated.

The Code of Civil Procedure of New York of 1898 prescribed the form of the application; likewise, that the court could require that notice of the application be served on the wife, husband, or next of kin of the person whose incapacity was sought to be declared. The Supreme Court said (p. 461):

"As the plaintiff had notice and opportunity to be heard at each stage of these proceedings the essential elements of due process of law were fully met, and the court had jurisdiction to enter that order."

In *Simon* v. *Craft, supra,* Jetta Simon as the person

involved was also served with a copy of the writ, in compliance with the Alabama statute. This was held to be sufficient.

Sections from 250 to 256 of the Civil Code of Puerto Rico deal with the guardianship of insane persons and deaf mutes. The first of these sections treats of the appointment of a guardian for insane or demented persons, or deaf mutes, and there is required in such cases a previous declaration of the district court of their domicil that they are incapable of managing their property. Such declaration may be demanded by the spouse, or relatives, or presumptive intestate heirs of the incapacitated person, or by the prosecuting attorney as provided in section 252, the last paragraph of which prescribes that the district court shall appoint a next friend to appear for the person presumed to be incapacitated if the latter does not desire or is unable to defend himself. In all other cases the prosecuting attorney shall act as next friend.

In the light of the above section of the Civil Code, the proceeding for the declaration of incapacity of Emilia Voight can not be sustained as lawful and valid. It does not appear from such proceeding that the person affected and presumed to be incapacitated was provided with a next friend to defend her. The district attorney appeared, but not as the next friend of the person alleged to be incapacitated.

We shall not dwell upon the last paragraph of section 252 of the Civil Code (section 182 of the same Code, as revised by the Legislative Code Commission created by Act No. 50 of 1928, and authorized by Joint Resolution No. 18 of April 21, 1930). In any case, the alleged incapacitated person must be provided with a next friend, who can be either the district attorney or any of the relatives mentioned in the said section. His status is that of a next friend and not of an officer of the court.

It is a fact that in the present case the alleged incapacitated person was not so represented.

In these circumstances, the proceeding for the declara-

tion of incapacity was had against a person who was not notified of the inquisition and was not given an opportunity to defend herself. We do not decide as to whether or not Emilia Voight is an incapacitated or insane person. But if her incapacity relates only to the management of her property, the more reason there is to assert not only her right to be notified of the institution and prosecution of said proceeding, but the practical possibility of such notice. In the absence of said notice, she could not lawfully and validly be submitted to a guardianship which in point of fact means a restraint of her liberty.

For the foregoing reasons, the application for a writ of habeas corpus must be granted.

Mr. Justice Wolf took no part in the decision of this case.

Mr. Justice Aldrey, dissenting.

The decisions of this Court in the present case and in another between the same parties, certiorari No. 760, decided on the 17th instant, are rested on the ground that the order of the District Court of San Juan declaring Emilia Voight de Tischer incapacitated to manage her property and appointing her son, Otto Tischer, as her guardian is void because said lady was not served with notice of the petition filed for that purpose by five of her seven children.

The prevailing opinion cites *Chaloner* v. *Sherman,* 242 U. S. 455 and *Simon* v. *Craft,* 182 U. S. 427, in support of the ruling that notice of the petition for the declaration of incapacity should have been served on Emilia Voight. However, the holding in the *Chaloner* case was not that the service of notice on the incapacitated person was necessary but that compliance had been had with the New York statute requiring such service. In the other case, which originated in Alabama, the finding was upheld that when Mrs. Jetta Simon was taken into custody in consequence of the petition filed for an inquisition of lunacy as to her, she had been served with a copy of the writ setting a day for the hearing of the case, as re-

quired by the Alabama statute. In both of these cases service was made on the two insane persons—for they were insane—and this constituted all their intervention in the proceedings, since Mrs. Simon was not produced in court nor did Chaloner appear. Neither of them was represented at the hearing and in both cases the decree of incapacity was affirmed.

The sections of our Civil Code which deal with the declaration of incapacity in the case of insane or demented persons and deaf mutes who are of full age do not prescribe that notice of the petition for a decree of incapacity be served on the alleged incapacitated person, as now held in the majority opinion. Said sections, however, go beyond the mere service of notice, as they provide for the appointment of a person to act as next friend. Section 252 prescribes, in effect, that where the prosecuting attorney applies for a decree of incapacity the court shall appoint a next friend for the person presumed to be incapacitated, and that where the petition is made by the spouse of the incapacitated person or by the relatives entitled to do so the district attorney shall act as next friend. So that, in these latter cases, the district attorney acts as next friend by express mandate of the law.

The petition for the declaration of incapacity in the instant case was made by children of Emilia Voight; hence the prosecuting attorney was her next friend and legal representative, and he was served with notice of the petition on the very day that it was filed in the district court. Such notice by itself turned the prosecuting attorney into a next friend of Emilia Voight. Therefore, in my judgment, it can not be maintained that there was no due process of law for the purpose of a declaration of incapacity in the present case, since she had a legal representative before the court. It is true that it does not appear from the stenographic record— which has not been approved by the court—that the prosecuting attorney was present when the evidence was taken; but

this is no ground for avoiding the proceeding, the more so since there appear on said record the words "No objection" over the signature of the prosecuting attorney. This shows that he examined the evidence introduced and found it sufficient to warrant a decree of incapacity.

By reason of the foregoing, I am of the opinion that the declaration of incapacity of Emilia Voight is not void, nor is the appointment of a guardian which was made; and, therefore, that the application for a writ of habeas corpus in this case should not have been granted.