Terrence DOWNES

v.

John J. NORTON, Warden, Federal Correctional Institution, Danbury.

John JACKSON

v.

John J. NORTON, Warden, Federal Correctional Institution, Danbury, Mr. Keyes, Case Worker Manager.

Civ. Nos. B-772, B-773.

United States District Court,
D. Connecticut.

June 29, 1973.

John M. Creane, Bridgeport, Conn., for petitioners.

Barry J. Cutler, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION ON PETITIONS FOR WRITS OF HABEAS CORPUS

NEWMAN, District Judge.

Petitioners, in these two unrelated cases, challenge the constitutionality of procedures of the Bureau of Prisons providing for forfeiture of good time at hearings held in petitioners' absence. The procedures are set forth in Bureau of Prisons Policy Statement 7400.6A (August 13, 1971) (hereafter "Policy Statement"). Petitioners, currently incarcerated at the Federal Correctional Institution at Danbury, are properly before this Court pursuant either to 28 U. S.C. § 2241 or 28 U.S.C. § 1361, see, e. g., United States ex rel. Colen v. Norton, 335 F.Supp. 1316 (D.Conn.1972).[1]

Both petitioners were serving sentences at the Danbury Federal Correctional Institution prior to their transfer to the Community Treatment Center (C.T.C.) in New York City. Downes had earned good time credits pursuant to 18 U.S.C. § 4161 entitling him to release on May 10, 1973. On February 26, 1973, he failed to return to the C.T.C. while on a pass and was placed in escape status two days later. On March 2, 1973, a hearing was held at the C.T.C., in petitioner's absence, at which all his ninety days of good time were forfeited. He was returned to custody on April 11, 1973.

Jackson had earned credits entitling him to release on April 10, 1973. On December 14, 1972, he too failed to return to the C.T.C. while on a pass and was placed in escape status four days later. His *in absentia* hearing was held December 26, 1972, at which all his 211 days of good time were forfeited. He was returned to custody on February 23, 1973.

The Bureau of Prisons has specified detailed procedures for good time forfeiture. Policy Statement, § 4 "Forfeiture of Good Time." The specified hearing includes a summary transcript, presence of the inmate and a staff member he chooses as his representative, notice of

---

1. The government does not assert a failure to exhaust administrative remedies, see 18 U.S.C. § 4166; Gilchrist v. United States, 427 F.2d 1132 (5th Cir. 1970); Kochie v. Norton, 343 F.Supp. 956 (D.Conn. 1972), and in the circumstances presented, exhaustion is not required. Jackson would have been released prior to this Court's hearing on June 18, and Downes within the next two weeks had they not forfeited their good time. Administrative remedies at this point in time are inadequate. *See e. g.*, Bach v. Mitchell, Civ. No. B–376 (D.Conn. Dec. 28, 1971) and cases cited therein. Moreover, Jackson claims to have sent written demands for restoration of his good time to both the respondent and to the Bureau of Prisons, which allegedly went unanswered, and Downes asserts he consulted his caseworker, who told him nothing could be done. These attempts, not denied by the government, seemingly would constitute exhaustion were it required here. *See* Lindsay v. Mitchell, 455 F.2d 917 (5th Cir. 1972).

the misconduct report, the opportunity to call witnesses if the misconduct is denied, and a chance to make a statement in mitigation or to have the representative speak. After hearing the evidence, a three-member Adjustment Committee submits a written report containing findings of fact and its recommendation to the Chief Executive Officer (hereafter "warden") who acts upon it. Thereafter the inmate is advised of the warden's decision, provided a copy of the Committee's report, and advised of his right to appeal.

A second § 4 of the Policy Statement, captioned "Exceptional Circumstances," exempts forfeiture procedures for escaped inmates from these requirements. This section provides:

a. When an inmate escapes from custody, good time forfeiture action may be taken in the absence of the inmate by the Adjustment Committee at the institution from which the escape occurred. Such action should be taken, if forfeiture is deemed appropriate, when the inmate is close to his mandatory release date or when it is likely that he will be taken, upon apprehension, to another institution. When the inmate whose good time is forfeited is returned to custody, he should be advised of the forfeiture and given the opportunity to submit a statement in mitigation to the Chief Executive Officer, who may consider it in making a decision as to restoration of good time. If an inmate refuses to appear at such a hearing without the use of force, the hearing, upon full documentation of this, may proceed in his absence. Only in such situations may good time be taken in the absence of the inmate.

■ Petitioners contend that the holding of a forfeiture hearing in their absence denies them procedural due process and that the differences between the procedures used for escaped inmates and for all others are irrational and therefore deny them equal protection of the laws. Both contentions are based on similar considerations.

■■ The requirements of due process depend on the nature of the right that is at stake and the context in which the right is impaired. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961). Loss of a prisoner's earned good time involves a right entitled at least to "basic safeguards." Sostre v. McGinnis, 442 F.2d 178, 203 (2d Cir. 1971), cert. denied sub nom. Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972); Rodriguez v. McGinnis, 456 F.2d 79 (2d Cir. 1971), rev'd on other grounds sub nom. Rodriguez v. Preiser, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (May 7, 1973); Banks v. Norton, 346 F.Supp. 917 (D. Conn.1972); Cloud v. Manson, Civ. No. 14,063 (D.Conn. May 3, 1972); Bach v. Mitchell, Civ. No. B–376 (D.Conn. Dec. 28, 1971).

■ The government attempts to analogize good time forfeiture to recission of a favorable parole decision not yet put into effect, which has been held not to require notice or hearing. Koptik v. Chappell, 116 U.S.App.D.C. 122, 321 F. 2d 388 (1963). While that decision has been followed in this District, Bach v. Mitchell, *supra*; United States ex rel. Felder v. United States Board of Parole, 307 F.Supp. 159 (D.Conn.1969), those decisions preceded Morrissey v. Brewer, *supra*, and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (May 14, 1973). While not directly on point, *Morrissey* and *Gagnon* raise serious questions concerning at what point a prisoner's reliance on an "implicit promise" of "conditional liberty," Morrissey v. Brewer, *supra*, 408 U.S. at 481–482, 92 S.Ct. 2593, demands procedural protection.

While it is difficult and not necessary to forecast where courts, after *Morrissey*, will place parole recission cases on the continuum from parole granting, see Elting v. Norton, Civ. No. B–685 (D. Conn. June 4, 1973), to parole revocation, it should be noted that the reason-

ing in the parole recission decisions themselves indicates the critical difference between a non-vested grant of parole and *earned* good time. *Koptik* emphasized the discretion inherent in parole, which is specified in 18 U.S.C. § 4203(a), and the continuing discretion *until* release provided in 28 C.F.R. § 2.-20. In sharp contrast, 18 U.S.C. § 4161, governing good time, provides that inmates *"shall be entitled"* to deductions from sentences when their conduct has been in keeping with the rules of the institution. Unlike parole, which an inmate may be unable to earn no matter how good his conduct, see Elting v. Norton, *supra,* earned good time is much closer to the "conditional liberty" that *Morrissey* held was entitled to procedural protection.

■■■ If good time forfeiture requires procedural due process protection, there can be no doubt that, at least in the *circumstances of these cases,* the *in absentia* hearing is unconstitutional. Presence at a hearing is a basic ingredient of due process. Goldberg v. Kelly, 397 U.S. 254, 267–269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914); Simon v. Craft, 182 U.S. 427, 436, 21 S.Ct. 836, 45 L.Ed. 1165 (1901). While some proceedings, even trials, can continue if a defendant absents himself after the proceeding starts, Diaz v. United States, 223 U.S. 442, 445, 32 S.Ct. 250, 56 L.Ed. 500 (1912), or even after he has notice of the trial date, United States v. Tortora, 464 F.2d 1202, 1208–1210 (2d Cir. 1972), the government cites no instance where escape justified the commencement of an *in absentia* hearing concerning charges not previously made. Certainly defendants cannot be charged and tried *in absentia* for violation of the escape statute, 18 U.S.C. § 751.

■■ The government contends that the procedure provided by the Policy Statement comports with due process. The claim is that the fact of escape establishes the violation of prison regulations without the need for an adversary hearing (at least when the escape has lasted longer than the few hours that might be explainable by delayed or missed transportation). Thus, the argument continues, the returned prisoner is only entitled to be heard on the issue of punishment, and he receives this opportunity by his right to seek restoration by the warden of forfeited good time.

Whether an inmate's absence can conclusively establish the escape is not as clear as might be supposed. Issues, such as voluntariness, may require resolution. *Cf.* United States v. Chapman, 455 F.2d 746 (5th Cir. 1972). More significantly, the opportunity to seek restoration of forfeited good time is an inadequate substitute for the opportunity to present mitigating circumstances *before* the forfeiture decision is made. See Fuentes v. Shevin, 407 U.S. 67, 81 (1972), 92 S.Ct. 1983, 32 L.Ed.2d 556; Goldberg v. Kelly, *supra.* While the word "escape" brings to mind the act of an inmate forcibly or surreptitiously breaking out of close security, it often means in practice, as these cases illustrate, the far less dangerous situation of an inmate, already determined to be a minimum security risk, failing to return from a work release assignment or a weekend pass to a community treatment center. His action need not be condoned, but it is important to assess its gravity and to determine the penalty with all of the facts before the decision-maker. Even the most sensitive administrators are less likely to reverse an adverse decision previously made than to reach such a result initially.[2]

---

2. While the inmate who forfeited good time *in absentia* for escape has the opportunity to make a statement in mitigation which the warden "may consider . . . in making a decision as to restoration of good time," Policy Statement, Second § 4, the burden has shifted to the inmate seeking restoration. *See* Armstrong v. Manzo, 380 U.S. 545, 551–552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Clutchette v. Procunier, 328 F.Supp. 767, 781 (N.D.Cal. 1971). The *post facto* opportunity to

The government further contends that special circumstances attending some escaped inmates justify the *in absentia* hearing. They suggest situations where a prisoner escapes just prior to his scheduled release date and is recaptured in a distant jurisdiction. While his time in escape status does not count as service of his sentence, the concern is expressed that upon recapture there will not be sufficient time to hold a hearing with the prisoner in attendance before the scheduled release date.

It is by no means certain that the difficulty in holding a forfeiture hearing promptly after a prisoner's return to custody and transporting him or witnesses to wherever the hearing is to be held can ever justify an *in absentia* hearing. It is unnecessary to decide that question, however, for in this case the shortest period between return to custody and scheduled release date, taking escape status into account, was over two months—ample time to hold a hearing with the prisoner and witnesses present. It will be time enough to consider the validity of an *in absentia* hearing under serious time constraints if and when a case arises when a prisoner escapes within a week or ten days of his scheduled release date.

The use of an *in absentia* hearing in these cases was constitutionally impermissible, and the petitioners' good time must be restored unless within ten days from the date hereof all or some portion of their earned good time is determined to be forfeited at a hearing at which they are present before a decision-making person or persons who have not previously ruled on their forfeitures. It may be that the Bureau need not afford those in escape status precisely the same procedural protection afforded all others, but anything short of that, save in emergency situations, makes little if any sense from an administrative standpoint, see United States ex rel. Colen v.

Norton, *supra*, 335 F.Supp. at 1318, and might well raise substantial due process problems. Moreover, the government has not suggested that it would wish to use any procedure other than what is set forth in the Policy Statement for inmates other than escaped prisoners, in the event the *in absentia* hearing procedure is invalidated for these petitioners. Therefore, this Court will assume that the new hearing to be given these petitioners will accord with the general procedures of the Policy Statement.

So ordered.

---

make a mitigating statement cannot cure the pre-forfeiture lack of adequate procedural protection. Moreover, the stipulation of facts in Jackson's case indicates

that the warden will not even consider a plea for restoration of forfeited good time until a returned inmate has completed six months of good behavior.