IDA WEINBERG, Appellant, *v.* IDA WEINBERG, as Committee of the Person and the Estate of ALBERT I. WEINBERG, a Lunatic, and ALBERT I. WEINBERG, Defendants, Impleaded with ESTHER A. WEINBERG, Also Known as FANNIE WEINBERG, Respondent.

Fourth Department, November 16, 1938.

*Gano, Berger & Solomon [Casper L. Solomon of counsel], for the appellant.*

*Charles Porter Maloney, for the respondent.*

DOWLING, J. On August 31, 1920, Albert I. Weinberg was adjudged insane and was committed to Rochester State Hospital where he remained until June 4, 1924, when he was released on parole. On August 22, 1922, he was adjudicated an incompetent person and plaintiff, his mother, was appointed committee of his estate and person by the Monroe County Court. His mental illness, dementia præcox, began in January, 1916. Between that date and September 3, 1926, Weinberg had been confined periodically in various institutions for the mentally ill. In 1917 he enlisted in a Rochester regiment and was stationed at Spartanburg, S. C. He was discharged from the service in December, 1917, presumably on account of his mental condition.

In August, 1926, Esther Margolis and her mother came from Menaco, Pa., to Rochester to visit at the home of Mrs. Margolis' cousin, Samuel Cohen. The Cohens were on friendly terms with the Weinberg family. Albert and Esther met and became attached to each other. Esther and her mother remained in Rochester for about two weeks. Esther and Albert spent the days and evenings of her stay in each others' company. Weinberg told his mother that Mrs. Margolis wanted him to marry Esther and the mother objected. At this time Esther was a nervous person. A day or two after Esther had left Rochester, Weinberg went to her home in Pennsylvania. Two days later his mother received a letter from him informing her of his marriage to Esther. The marriage occurred at Pittsburg, Pa., on September 3, 1926. Weinberg and his wife sent out printed notices of the wedding and plaintiff and other relatives visited the bride and groom at Menaco. After four or five weeks Weinberg left his wife and returned to his home in Rochester. They have not lived together since. No children were born of the marriage.

On March 19, 1930, Weinberg was again committed to Rochester State Hospital by an order of Monroe County Court. Since 1930, with the exception of a year or two, he has been confined in veterans' hospitals.

Weinberg receives $100 per month from the United States government, thirty dollars of which is allotted to his wife and fifty dollars to his mother monthly for their support.

In June, 1936, plaintiff instituted this action to annul the marriage on the ground of lunacy. Defendant Esther A. Weinberg answered denying Weinberg was a lunatic on the occasion of the marriage

and as an affirmative defense she alleged Weinberg had recovered his sanity on the occasion of the marriage and was suffering no mental disability sufficient to invalidate the marriage. On the trial the court dismissed the affirmative defense and awarded said defendant a judgment dismissing the complaint upon the merits. From the judgment entered plaintiff appeals.

Appellant urges reversal on two grounds: (a) A person judicially declared to be incompetent and a lunatic and for whom a committee has been appointed is incapable of contracting marriage. (b) The evidence fails to establish that Weinberg had a lucid interval at the time the marriage was contracted.

" An action to annul a marriage on the ground that one of the parties thereto was a lunatic may be maintained at any time during the continuance of the lunacy   *   *   *   by any relative of the lunatic who has an interest to avoid the marriage." (Civ. Prac. Act, § 1137.) Weinberg's lunacy still continues. The committee of an incompetent cannot maintain such an action. (*Walter* v. *Walter*, 217 N. Y. 439.) Such an action may be prosecuted by a guardian *ad litem*. (*Kaplan* v. *Kaplan*, 256 N. Y. 366, 367, 368.) The incompetent's father is dead. His mother is partly dependent on him for support. Therefore, she has an interest sufficient to entitle her to maintain this action.

" Marriage, so far as its validity in law is concerned, continues to be a civil contract, to which the consent of parties capable in law of making a contract is essential." (Dom. Rel. Law, art. 3, § 10.) " A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either . party thereto   *   *   *   Is incapable of consenting to a marriage for want of understanding; " or " Has been incurably insane for a period of five years or more." (Dom. Rel. Law, art. 2, § 7, subds. 2, 5.) Sections 5 and 6 of article 2 of the Domestic Relations Law specify the grounds which render a marriage absolutely void. Insanity is not among them. So far as statutory regulations are concerned a marriage contracted by an insane person is voidable only. " The terms lunatic and lunacy include every kind of unsoundness of mind except idiocy." (Gen. Construction Law, § 28.) " A serious distinction has always been recognized between lunatics and idiots. The one had lucid intervals, the other no power of mind whatever." (*Bicknell* v. *Spear*, 38 Misc. 389, 391.) Marriage is a civil contract and is founded upon the consent of the parties capable in law of making a contract. It differs from ordinary common-law contracts on account of its subject-matter. Marriage is the subject of regulation by law. (*Fearon* v. *Treanor* 272 N. Y. 268; *Livingston* v. *Livingston*, 173 id. 377; *DiLorenzo* v. *DiLorenzo*, 174 id. 467; *Shonfeld* v. *Shonfeld*, 260 id. 477.)

Before a marriage can be annulled on the ground of lunacy or for want of understanding on the part of one of the parties, it must be shown satisfactorily that such party " was mentally incapable of understanding the nature, effect and consequences of the marriage." There is a presumption of sanity in favor of the validity of a marriage celebrated in due form which should prevail " unless it is overcome by proof, clear and satisfactory, which stands the test of the most careful scrutiny." (*Meekins* v. *Kinsella*, 152 App. Div. 32, 36, 37; *Fisher* v. *Fisher*, 250 N. Y. 313, 317.) " The consentaneous judgment of all jurists, is against the possibility of a lunatic making any contract. * * * Where there is no capacity there can be no contract, no marriage, nothing to annul or dissolve." (*Jaques* v. *Public Administrator*, 1 Bradf. 499, 516.) Marriages contracted by persons incapable of contracting are voidable only. (*Hoadley* v. *Hoadley*, 244 N. Y. 424, 428, 430, 431.) The marriage of a lunatic is voidable, not void. (*Jones* v. *Brinsmade*, 183 N. Y. 258, 262; *Matter of Moncrief*, 235 id. 390, 396.)

" All contracts of a lunatic, habitual drunkard or person of unsound mind, made after an inquisition and confirmation thereof, are absolutely void, until by permission of the court he is allowed to assume control of his property. * * * In such cases the lunacy record, as long as it remains in force, is conclusive evidence of incapacity " (*Hughes* v. *Jones*, 116 N. Y. 67, 72, 73), and the same holds true after a committee has been appointed. (*Carter* v. *Beckwith*, 128 N. Y. 312, 316.) A deed executed by an insane person, where no committee of his property has been appointed, is voidable only. (*Finch* v. *Goldstein*, 245 N. Y. 300, 304.) A person for whom a committee has been appointed may make a valid will if he has a lucid interval and the will is freely and intelligently made. (*Matter of Coe*, 47 App. Div. 177.) " It has been held that the inquisition is only presumptive evidence of incapacity as to some acts done subsequently. * * * There is no authority as to the act of marriage. It requires the assent of the parties, but it does not affect property directly, and is an act which the committee cannot do for the ward." (*Banker* v. *Banker*, 63 N. Y. 409, 413.) " A person afflicted with insane delusions may be guilty of an intentional and deliberate homicide." (*Sleicher* v. *Sleicher*, 251 N. Y. 366, 373.) An insane person is responsible for his tortious negligence. (*Williams* v. *Hays*, 143 N. Y. 442, 446; *Palsgraf* v. *Long Island R. R. Co.*, 248 id. 339, 348.) An inquisition followed by appointment of a committee is not conclusive as to the competency of the subject to make a marriage contracted by him necessarily void. (*Martello* v. *Cogliostro*, 122 Misc. 306, 308, 309,

and cases cited.) " The marriage of an insane person during a lucid interval is good. It was so in England prior to the statutes [15 Geo. II, ch. 30]; hence it is so now at common law in our States; the question being whether or not, at the time of the marriage, both parties were capable of consenting." (1 Bishop on Marriage & Divorce, chap. XX, § 603.) The marriage of a lunatic, not being in a lucid interval, is absolutely void. (*Wightman* v. *Wightman*, 4 Johns. Ch. 343, 344.)

It is clear that the contracts which a lunatic under committee is forbidden to make are those which relate to his estate. He may make other kinds of contracts, including that of marriage, providing he is in such mental condition that he can give to them a legal consent. In determining mental capacity " a court does not distinguish between different degrees of intelligence." (*Hirsch* v. *Trainer*, 3 Abb. N. C. 274, 277.)

The burden was on the defendant wife to establish that her husband had a lucid interval when she married him and that he knew and understood the nature and quality of his act and was legally competent to and did give full and free consent to the marriage contract. An expert on mental diseases testified that Weinberg's disorder was chronic, progressive and permanent. His mother and brother testified that the incompetent was melancholy, sang at night in a loud voice, slept very little, swore at his mother, called her vile names, played the radio all night, pulled the bed clothes off people because he did not want them to sleep when he could not, rolled from one room to another and beat his feet and hands on the floor hours at a time, refused to eat at the family table, talked at random, removed the bedding, refused to talk to any one for several days at a time. All of which happened over a period of several months immediately prior to the marriage. His mother testified: " He was the type that he wouldn't show on the outside." On the other hand, there is evidence on behalf of the wife that, before, at the time of and after the wedding, the incompetent acted and talked on every subject in a perfectly rational manner, was a very pleasant person, was entertaining, said he liked Esther very much and that his family thought well of her, invited Esther and her mother to go places, took Esther boating and swimming, talked of books with Esther and played the victrola, worked in stores waiting on customers, went to Pennsylvania of his own free will, asked Esther to marry him and helped to arrange for the wedding, made no disturbance during their cohabitation, belonged to a veterans' organization of which he was quartermaster, arranged for talent at entertainments given by that post. The dates in reference to the latter activities, however, were not definitely

fixed. There is evidence that his wife was the cause of their separation. Defendant wife did not testify. Whether or not she knew he was an incompetent is immaterial. The adjudication and the appointment of a committee were notice to her and to all the world. (*McCarthy* v. *Bowling Green Storage & Van Co.*, 182 App. Div. 18, 21.)

Defendant wife offered no expert testimony. Lay witnesses may testify that the acts and declarations of a person impressed them as rational, but they are not competent to testify to the mental capacity of a person. (*Paine* v. *Aldrich*, 133 N. Y. 544, 547; *Wyse* v. *Wyse*, 155 id. 367, 371, 372.) Leppla and Weyrauch were disinterested witnesses. Their testimony afforded some corroboration to the testimony of Cohen and Mrs. Margolis who were decidedly interested witnesses.

The learned trial justice found: " That at the time of the marriage between the said defendants, Albert I. Weinberg and Esther A. Weinberg, the said Albert I. Weinberg was mentally capable of understanding the nature, effect and consequences of the marriage ceremony." Giving full force and effect to the legal presumption growing from the inquisition, there is evidence, nevertheless, sufficient to support this finding. The only evidence offered to support the presumption, aside from the medical testimony, was that of the incompetent's mother and brother. No neighbor or disinterested witness was called to corroborate this testimony. While this evidence was not contradicted, " the interest of the witness and the character of the evidence might, not unreasonably, lead to doubt of its truth." (*Chaika* v. *Vandenberg*, 252 N. Y. 101, 104; *St. Andrassy* v. *Mooney*, 262 id. 368, 372.) If the incompetent was guilty of the conduct detailed by his mother and brother, strange it is that no neighbor was called to tell of these nightly disturbances. Under the circumstances, the trial court might properly disregard this testimony.

It is not unreasonable to suppose that the incompetent's family welcomed the idea of his marriage. At any rate, his mother waited for ten years before instituting action to have it annulled. Defendant wife is content to draw thirty dollars per month for her wants. No doubt the incompetent was guided into this marriage. But there is no evidence that he ever expressed a desire to have it annulled. A marriage that has endured for ten years should not be lightly set aside.

The case of *O'Reilly* v. *Sweeney* (54 Misc. 408), relied on by appellant, is distinguishable on the facts. After the defendant, in that case, had been adjudged a lunatic and a committee had been appointed over his estate and person he entered into an engagement

to marry the plaintiff. He failed to perform and she sued him for damages and had a verdict which the court set aside on the ground that the record in the lunacy proceedings was conclusive evidence that the defendant was incapable of making a valid contract. The court merely held that the estate of an incompetent, who is under a committee, is not liable in damages in an action for breach of promise to marry. Of course an incompetent under committee cannot make a contract which binds his estate. Marriage, however, is not such a contract. (*Banker* v. *Banker*, *supra*.)

The judgment should be affirmed, without costs.

All concur. Present — SEARS, P. J., LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Judgment affirmed, without costs of this appeal to either party.