**Rita Hooper DALE, a former incompetent person, Plaintiff,**

v.

**Demarest J. HAHN, individually and as committee of the person and property of Rita Hooper Dale, for the period of July 24, 1962 until April 10, 1967, Alan D. Miller, M.D., individually and as Commissioner of the New York State Department of Mental Hygiene, Edward Pious, individually and as committee of the person and property of Rita Hooper Dale for the period of April 10, 1967 until the present, and Lawrence P. Roberts, M.D., individually and as Director of Harlem Valley State Hospital, Defendants.**

**No. 69 Civ. 3531.**

United States District Court
S. D. New York.

March 26, 1970.

Bruce J. Ennis, New York Civil Liberty Union, Jonathan Weiss, New York City, Center on Social Welfare Policy and Law, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for Defendants Miller and Roberts; Samuel A. Hirshowitz, First Asst. Atty. Gen., Irving L. Rollins, Asst. Atty. Gen., of counsel.

## OPINION

COOPER, District Judge.

This is a purported class action by plaintiff Dale (1) for a declaratory judgment that section 102 of the Mental Hygiene Law, McKinney's Consol.Laws, c. 27 of the State of New York (formerly § 1374 of the Civil Practice Act), which provides a procedure for the appointment of a committee for a patient of a state mental institution, denies plaintiff due process and the equal protection of the laws and invades her right to privacy, (2) for an injunction restraining further enforcement, operation or execution of the alleged unconstitutional statute, (3)

for a return to plaintiff of all her moneys had and received. Plaintiff also seeks preliminary injunctive relief pursuant to 28 U.S.C. § 2284.

She now moves for the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284 and for a temporary restraining order returning to her the net balance of her estate still in the hands of the committee. Applicant Escariz moves to intervene as a party plaintiff herein pursuant to Rule 24, F.R. Civ.P. Defendants move to dismiss the complaint pursuant to Rule 12(b) (1), (2) and (6), F.R.Civ.P.

## Facts

Plaintiff was committed to Harlem Valley State Hospital, Wingdale, New York in 1952 by order of certification of the New York Supreme Court, Bronx County, as a person afflicted with mental disease to such an extent that for her own welfare or the welfare of others, or of the community, she required care and treatment pursuant to former § 74 of the Mental Hygiene Law (since repealed). At no time during her confinement did plaintiff invoke the review procedure provided by former § 76 of the Mental Hygiene Law (now § 74). She expressly declares that she does not contest the validity of her commitment.

While she was a patient therein, defendant Roberts (the hospital director) petitioned the same New York Supreme Court for an order pursuant to C.P.A. § 1374 appointing a committee to manage her personal and business affairs. The verified petition stated that plaintiff had been legally committed to and was then an inmate of the Harlem Valley State Hospital of which Dr. Roberts was director, that plaintiff was then of unsound mind and incompetent to manage her person or property, that she was widowed and without known kin, and set forth the nature and extent of her known property.

Defendants provide us with a certified copy of a return of service filed with the Bronx County Supreme Court on July 22, 1962 stating personal service of the Petition and Notice of Motion was made upon plaintiff Dale as well as upon Dr. Roberts. The Notice of Motion served upon plaintiff stated that the motion to appoint a committee would be heard in the Supreme Court, Bronx County, at 10:00 A.M. on July 24, 1962. Plaintiff's present complaint denies upon information and belief that plaintiff received such notice; no affidavit from plaintiff is submitted in support of that denial.

On July 24, 1962 the motion for appointment of a committee was granted by default in the court aforesaid on the basis of Dr. Roberts' petition. Defendant Hahn, now deceased, was appointed Committee of her person and property. The complaint alleges that Hahn, as plaintiff's committee, received approximately $9,283 for her account.

By order dated October 13, 1966 of the same court, Hahn was allowed to resign as Committee and move the judicial settlement of his account. A Guardian ad Litem, having been appointed by the Court on July 28, 1966 to protect the rights and interests of plaintiff on this accounting, filed a report and affidavit in her behalf in connection therewith. On April 10, 1967 the Court settled the final account of Hahn, discharged him as Committee and from any and all further liability once the payments directed by the Court were made, and ordered that defendant Pious be appointed Successor Committee of the person and property of plaintiff. The complaint alleges that Pious, as Successor Committee, received approximately $5,572 for plaintiff's account, representing the balance remaining after the disbursements ordered by the Court in the settlement of Hahn's account were made.

On April 18, 1967 plaintiff was discharged from Harlem Valley State Hospital. Thereafter, on motion of Pious and supporting affidavit of plaintiff, she was "declared competent to manage her person and her property" by order of the Supreme Court, Bronx County, dated December 13, 1968. This order authorized

and directed Pious to file a final account of all of his proceedings from the date of his appointment and to move for the judicial settlement thereof within thirty days, unless he restored to plaintiff her property after deducting proper charges and obtain a receipt and release therefor, in which event an application could be made ex parte for his discharge.

Pious, although willing to return plaintiff's property, has been unsuccessful in his efforts to obtain a receipt and release. On August 11, 1969, long after she was released and declared competent, plaintiff commenced this action. She states "for the record" that Pious is not charged "with any impropriety or individual wrongdoing." See Letter of Bruce J. Ennis, Esq., January 29, 1970. The parties have agreed that Pious will proceed by April 6, 1970 to settle his account as plaintiff's committee in an appropriate state court to the end that the balance of her property still in the hands of the Committee will be restored to her as soon as possible. See Affidavit of Edward Pious, Esq., December 15, 1969, p. 4; Stipulation of the Parties, February 3, 1970, ¶ 3.

### I  *Three-Judge Court Requirements*

■ The single district judge before whom an application is made to convene a three-judge court must determine whether a substantial constitutional question has been raised with respect to the state statute, whether the complaint sets forth a basis for equitable relief and whether the other requirements for a three-judge court are met. See Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Green v. Board of Elections, 380 F.2d 445 (2d Cir. 1967), cert. denied 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968); American Commuters Assoc., Inc. v. Levitt, 405 F.2d 1148 (2d Cir. 1969). If plaintiff fails to carry her burden in this regard, a three-judge court must be denied.

### A.  Substantiality of the Constitutional Question

■ If the complaint fails to raise a substantial federal question with respect to a state statute, a three-judge court must be denied and the action dismissed. See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). The Supreme Court has stated that "[t]he lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938).

In rejecting the view "that, except 'in an open and shut case,' it is better to 'constitute a 3-Judge Court, and allow that court to determine initially' whether it should have been constituted," our circuit has stated:

"An occasional reversal because a court of appeals will disagree with respect to the substantiality of the question is far less wasteful of judicial resources. * * * the best course for this circuit is for single district judges to continue conscientiously to pass upon the substantiality of constitutional attacks on state statutes * * * and, where this court unanimously agrees that the attack is without merit, for us not to be finical on whether the lack of merit was obvious." Heaney et al. v. Allen et al., 425 F.2d 869, 872 (2d Cir, 1970) (citations omitted).

### 1.  Due process

Plaintiff's contention that the appointment of a committee to manage property pursuant to the procedure provided by § 102 (and former § 1374 under which her committee was appointed) deprived her of the right to control her property without due process of law, we find to be without substantial merit.

■■ Notice and a judicial hearing before a court of law affording her an

opportunity to be heard (she being a widow and the only known interested party) satisfies the essential requisites of due process and fundamental fairness.[1] See Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (prejudgment attachment); Mullane v. Central Hanover Bank & Trust Co., Trustee, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Simon v. Craft, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165 (1901) (commitment to a mental institution); Bradford Audio Corp. v. Pious, 392 F.2d 67 (2d Cir. 1968). See also, Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 163, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Justice Frankfurter, concurring).

Here, a month in advance of the return day, plaintiff was, as we have already noted, given personal notice of the motion to appoint a committee, informed when and where it would be heard, and given an opportunity to register any objection. The allegation that no notice was received by plaintiff is made without a supporting affidavit or any other evidentiary support and fails to raise a genuine issue in this regard. No opposition having been registered by plaintiff, the motion to appoint a committee was granted by default. In the absence of any objection, there was no occasion for the court to inquire beyond the allegation of the petition that plaintiff was of unsound mind and incompetent to manage her person or property.

Plaintiff further contends that controlling New York authority interprets sections 102 and 1374 to "permit the inference" that involuntary commitment is equivalent to incompetence and inability to manage business affairs; that such questions are in fact legally and medically dissimilar; and that as a result these sections improperly shift to the patient the risk of non-persuasion in a subsequent proceeding to show competency to handle business affairs. This argument lacks merit in light of the notice and opportunity afforded plaintiff at the initial hearing. Compare Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

■ Treating the above as an argument that the New York courts have created a presumption of incompetency upon a showing of involuntary commitment which may violate due process, we find no merit to such contention. In Leary v. United States, 395 U.S. 6, 32–36, 89 S.Ct. 1532, 1546, 23 L.Ed.2d 57 (1969), the Supreme Court held that the controlling test for determining the constitutional validity of a statutory presumption (or of a permissible "inference" as plaintiff alleges) is whether there is a "rational connection between the facts proved and the fact presumed." See also, Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910).

We believe it clear that an inference of inability to adequately conduct personal or business affairs from an adjudication of mental illness presently requiring care and treatment cannot be said to be "arbitrary because of lack of connection between the two in common experience." Leary v. United States, *supra*, 395 U.S. at 33, 89 S.Ct. at 1547. We are satisfied, and plaintiff does not contend to the contrary, that "it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Id.* at 36, 89 S.Ct. at 1548.

Although not asserted by plaintiff, a line of New York authority indicates that the court may consider the adjudication of mental illness requiring involuntary commitment conclusive on the question

---

1. We do not believe that a person who has been judicially committed to a state institution, as was plaintiff, with the opportunity afforded her of a jury determination of the need for her confinement, which commitment procedure plaintiff concedes to fully comply with the requirements of due process, must be furnished counsel and the right to a jury trial in order to meet the essentials of due process in the appointment of a committee to care for and manage her property. See, *e. g.*, Sponza v. German Savings Bank, 192 N.Y. 8, 18–22, 85 N.E. 1116 (1908).

of incompetency for purposes of appointing a committee to manage and conserve the patient's property in her behalf.[2] See Sporza v. German Savings Bank, 192 N.Y. 8, 19, 84 N.E. 406 (1908); In re Walker, 57 App.Div. 1, 67 N.Y.S. 647 (4th Dept. 1900); Martello v. Cagliostro, 122 Misc. 306, 202 N.Y.S. 703, 707–709 (1924); Application of Brown, 46 N.Y. S.2d 575, 581–583 (Sup.1944), rev'd on other grounds, 268 App.Div. 886, 50 N.Y. S.2d 783 (1945); In re Stearns, 59 N.Y. S.2d 103, 106 (Sup.1945). But see Finch v. Goldstein, 245 N.Y. 300, 303–305, 157 N.E. 146 (1927); Hoff v. New York, 279 N.Y. 490, 494, 18 N.E.2d 671 (1939); Quarterman v. Quarterman, 179 Misc. 759, 760, 39 N.Y.S.2d 737 (1943). Assuming arguendo that such cases correctly state the present New York practice, plaintiff might argue that such a conclusive presumption would violate due process. See United States v. Bowen, 414 F. 2d 1268, 1274–1280 (3rd Cir. 1969).

Plaintiff, however, by virtue of her failure to assert her competency, despite the notice afforded her, at the proceeding to appoint a committee, lacks standing to assert this possible violation of due process. Moreover, such a presumption is permitted on the ground that lawful commitment adjudicating that a person is mentally ill "to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment" makes her a ward of the state, with not only person but property placed in the custody of the state. See Sporza v. German Savings Bank, supra.

Conceding, as plaintiff does, that the initial commitment procedure affords full due process, this procedure to appoint a committee did not deprive her of due process of law. Compare United States v. Bowen, supra. As the New York Court of Appeals held in Sporza v. German Savings Bank, supra, 192 N.Y. at 19, 84 N.E. at 410:

"If she had been adjudged to be insane, then she has been deprived of no constitutional right; for, being an insane person, she had become a ward of the Supreme Court which had succeeded to the powers of the chancellor, and the custody of her person and property became subject to the control and management of the court through its specified agents appointed for that purpose. She is not deprived of her liberty or property without due process of law, for, as we have seen, she has been duly committed in accordance with the provisions of the statute upon an order of the court. She is not deprived of her property, for the court undertakes its care and management in her behalf and for her benefit."

Plaintiff next alleges that her right to control her property is a "fundamental person liberty" and that no deprivation of that right is constitutionally acceptable if there are "less drastic alternatives."

Applications of this principle as a mandate of due process are narrowly confined to situations in which First Amendment freedoms are involved or the exercise of basic rights are penalized. See Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14

2. Adjudication of incompetency does not foreclose plaintiff's competency to act in her own behalf in matters affecting her personal status; rather, the conclusiveness of such adjudication appears confined to business affairs and the power to contract. See e. g., Matter of Buttonow, 23 N.Y.2d 385, 395, 297 N.Y.S.2d 97, 244 N.E.2d 677 (1968). Where there is no committee, or where the matter is one in which the committee has no power to act on behalf of the person, the involuntary patient's acts are voidable at his election, rather than void. See Id.; Finch v. Goldstein, 245 N.Y. 300, 303, 157 N.E. 146 (1927); Weinberg v. Weinberg, 255 App.Div. 366, 8 N.Y.S.2d 341 (4th Cir. 1938).

L.Ed.2d 510 (1965); United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). This has no application to the case before us.

■ Plaintiff finally asserts that sections 1374 and 102 are void on their face because they authorize appointment of a committee without notice or hearing in the discretion of the court.[3] Assuming such notice and hearing are constitutionally required and not sufficiently met by the adjudication of insanity which makes the patient a ward of the State, and assuming further that notice and hearing are not in fact always given, nevertheless, plaintiff, having been afforded notice and registering no objection to the appointment of the committee, lacks standing to raise this argument. See United States v. Raines, 362 U.S. 17, 21–22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). The fact that this is a purported class action does not by itself afford her standing. This is not a question involving vagueness or overbreadth, nor does this involve First Amendment rights. We are not here faced with the possibility of a "chilling effect" on future exercise of such rights by others. Accordingly, no exception to the usual rule that plaintiff has no standing to raise this contention is warranted. Compare Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

## 2. Equal protection

Plaintiff contends that sections 1374 and 102 deprived her of property without equal protection of the laws as required by the Fourteenth Amendment. We believe this contention is also without sufficient merit.

Sections 1374 and 102 require neither a statement of facts in the petition showing incompetence nor a trial by jury on the issue of competence, elements required by Mental Hygiene Law § 101 for declaration of incompetency and appointment of a committee generally. Here, however, unlike Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966) on which plaintiff relies, the "distinction made [does] have some relevance to the purpose for which the classification is made." Compare United States ex rel. Schuster v. Herold, 410 F. 2d 1071 (2d Cir. 1969).

■ The class which is differentiated for the more summary procedure and to which plaintiff belonged is limited to those persons involuntarily committed[4] to a state mental institution. Clearly the state has a reasonable basis for treating persons judicially found to be so mentally ill as to require care and treatment differently from those who have not been so adjudicated (non-patients and voluntary patients) when devising procedures for determining mental competency and the appointment of committees. Further, the State may rationally conclude that the relatively inexpensive and less-traumatic but also less-protective procedure provided for by sections 1374 and 102 should be restricted to those involuntary patients over whom the State has direct control. By limiting its application to involuntary patients in a state mental hospital where a petition is filed by the director of such

---

3. "§ 1374
    4. Notice * * * shall be personally given to such person * * * unless sufficient reasons for dispensing therewith are set forth in the petition or shown by affidavit.
    5. Upon the presentation of such petition and proof of service of such notice, the court or justice, if satisfied of the truth of the facts required * * *, may appoint a committee * * * or may require any further proof which it or he may deem necessary before making such appointment."

§ 102
    "(3) Notice. Unless the court orders otherwise, notice of petition shall be served upon the patient * * *
    (5) Order. The court if satisfied of the truth of the facts stated in the petition, may appoint a committee without trial or hold the matter for further proceedings."

4. Voluntary patients come within § 102 only if they consent to such procedure. In the absence of such consent, § 101 is applicable.

hospital, any danger that the motivation for the petition may come from private interests in conflict with the patient's best interest is minimized since the hospital director is independent and an agent of the State.

■ Plaintiff further contends that the burden on the State is to show not only that its classification is reasonable, but that the distinction is made necessary by some "compelling" state interest. This added burden has been required of the state only in cases involving suspect classifications (such as race) or basic civil rights generally derived from the First Amendment. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944); Loving v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). There is no invidious discrimination present here. Compare Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). This case does not call for the application of that unusual and strict standard of equal protection of the laws.

### 3. Right to privacy

■ Plaintiff's argument in this regard, as we see it, is that before one's right to be let alone, to personal security, in sum to privacy, can be infringed the state must show a compelling justification for its action and that no less restrictive alternatives are available. While this principle has significant areas of applicability, we find it inapposite here. Compare Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542. See also Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1966).

There is no undue government intervention in either the procedure or the substance of the appointment of a committee for involuntary state mental patients in New York.

### 4. Lack of a sufficiently substantial federal question

■ On the basis of the foregoing, we conclude that plaintiff has failed to meet her burden of establishing a substantial constitutional question meriting the convening of a three-judge court. For this reason alone, defendants' motion to dismiss this action must be granted.

### B. Further Bases to Deny a Three-Judge Court and Dismiss

Plaintiff's application for a three-judge court must be denied and defendants' motion to dismiss granted for at least two other reasons. First, her complaint asserts no cause of action cognizable under 42 U.S.C. § 1983. Second, she lacks standing to enjoin the further appointment of committees pursuant to section 102; has no reasonable expectation of obtaining injunctive relief against her committee; and is barred by defendants' official immunity from recovering the damages alleged.

### 1. No cause of action under Civil Rights Act

Plaintiff's claim for relief is brought under the Civil Rights Act, 42 U.S.C. § 1983, for deprivation of rights secured to her by the Fourteenth Amendment. Jurisdiction is based on the Civil Rights jurisdictional statute, 28 U.S.C. § 1343 (3) and (4).

■ We believe the decision of our circuit in Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir. 1968) is controlling and establishes that, assuming plaintiff presents a substantial question, she has no cause of action under § 1983:

"To qualify under § 1983 the right sought to be enforced must in the main be one incapable of pecuniary evaluation, such as personal liberty unrelated to and not dependent upon an invasion

or deprivation of property interests. A suit for the enforcement of such civil rights will, however, not necessarily be removed from the scope of § 1983 because their enforcement may possibly affect property interests where those interests are incidental or ancillary to the basic personal right. *It may be argued that in the present case the appellant has endeavored to assert an unlawful interference with its freedom to deal with its own money or bank account but, even if this could be found to be so, the freedom can only be claimed to be impaired or lost when there has been an infringement of a property right—in this case the alleged unlawful seizure of the money. As the loss of freedom derives from and is dependent for its existence upon the infringement of the property right the action is not within the jurisdiction of § 1983."*

(emphasis added; citations omitted).

Plaintiff offers to amend her complaint to base jurisdiction upon federal question, 28 U.S.C. § 1331(a), contending she can meet the $10,000 amount in controversy requirement. This amendment would not, however, cure the absence of a cause of action under § 1983. In the *Bradford* case itself over $10,000 was involved and jurisdiction had been based on both 28 U.S.C. §§ 1331(a) and 1343(3) and (4), yet the absence of a cause of action under § 1983 was held fatal. See Bradford Audio Corp. v. Pious, *supra* at 69.

### 2. Right to the injunctive relief sought

a. appointment of committees under section 102

■ Plaintiff has been released from the Harlem Valley State Hospital and judicially declared competent. Any prospect that Mental Hygiene Law § 102 might again be employed to appoint a committee for plaintiff on some future occasion would require that plaintiff first be an involuntary patient again at a state mental hospital. It is "wholly conjectural that another occasion might arise" when the appointment procedure of § 102 would be invoked as to plaintiff. See Golden v. Zwickler, 394 U.S. 103, 109, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Compare Fhagen v. Miller, 306 F.Supp. 634, 636–637 (S.D.N.Y.1969). Plaintiff's stake in the further applicability of the appointment procedure of this section is not sufficiently immediate to accord her a basis for equitable relief enjoining appointment of committees pursuant to § 102.[5] See Linehan v. Waterfront Comm. of N.Y. Harbor, 116 F. Supp. 401, 404–405 (S.D.N.Y.1953); Hill v. Nelson, 272 F.Supp. 790, 799 (N.D. Cal.1967). See also, "Developments in the Law—Injunctions," 78 Harv.L.Rev. 994, 1074–1075 (1965).

■ Lacking any need to enjoin the further appointment of committees in her own behalf, plaintiff lacks standing to sue on behalf of the class of patients presently involuntarily committed to a state institution whom she purports to represent. While that class would have a sufficiently immediate interest in obtaining injunctive relief against the § 102 procedure, plaintiff may not represent a class of which she is no longer a member (as least where as here her membership had ceased before this suit was instituted) and, thus, may not in this suit invoke their rights. See 3B Moore, Federal Practice ¶¶ 23.04 and 23.10–1 (1969). See also, Carroll v. Associated Musicians of Greater N.Y., 316 F.2d 574, 576 (2d Cir. 1963); Lamont v. Postmaster General of the United States, 229 F.Supp. 913, 920–21 (S.D. N.Y.1964), rev'd on other grounds, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). Compare Norwalk CORE v. Norwalk Redevelopment Agency, 395 F. 2d 920 (2d Cir. 1968) (according an association the right to represent a class although not a member thereof). This

---

5. We do not intimate that plaintiff's suit is moot in the sense that no actual controversy exists. See Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958).

is not an issue evading effective review with no readily apparent class having sufficient standing to challenge the constitutionality of the § 102 procedure. Compare Fhagen v. Miller, *supra.*

### b. operation of present committee

Apart from enjoining the appointment of further committees plaintiff seeks to enjoin Pious from continuing to operate as her committee.[6] While this controversy appears clearly justiciable (the committeeship not yet terminated), we believe it equally clear that plaintiff has no need of such equitable relief, and, thus, no need for a three-judge court. See Linehan v. Waterfront Comm. of N.Y. Harbor, *supra;* Hill v. Nelson, *supra.* "Developments in the Law—Injunctions," 78 Harv.L.Rev. 994, 1074–1075 (1965).

Section 102(6) provides that upon release of a patient and a determination that he is presently able to adequately conduct his affairs, the committeeship shall be terminated and the person's property restored.[7] See also, 18 Carmody-Wait 2d § 109:126 (1967); 27 N. Y.Jur. "Incompetent Persons" § 15 (1963).

In the instant case, Pious moved the Supreme Court, Bronx County, to declare plaintiff competent and on December 13, 1968 the motion was granted. She is presently managing her property except as to that entrusted to the Committee. As to such property so entrusted, that Court in its same order directed Pious to file a final account and to move for the judicial settlement thereof. The parties have agreed among themselves that Pious shall within a month move the judicial settlement of his account. Except for such final accounting, nothing further remains to be done by Pious.

As we see it, plaintiff has an adequate remedy at law in the state courts which the parties have agreed to pursue. Any injunctive relief that might be fashioned by a three-judge court could afford plaintiff no further or speedier remedy. Termination of the committeeship forthwith is not resisted by defendants and is mandated by state law and the order of the Supreme Court, Bronx County.

With regard to enjoining committees presently outstanding, plaintiff again purports to represent a relevant class comprised of all those who have committees appointed pursuant to § 102. For reasons already set forth in the preceding section, plaintiff may not represent those persons whose rights and defenses differ materially from her own. As to the class of persons released from the institution and declared competent whom she might fairly represent, their need for equitable relief is wholly speculative. In any event, with only plaintiff's committee before us, we see no basis on which an effective equitable decree in favor of this class might be fashioned.

Accordingly, as there is no basis for any reasonable expectation that equitable relief (as required by 28 U.S.C. § 2281 for the convening of a three-judge

---

6. The parties on February 3, 1970 stipulated to drop Pious as a defendant in this action in the event he should prove unnecessary to plaintiff's standing to sue or to this Court's jurisdiction. In view of our determination that plaintiff may not enjoin the further appointment of committees, Pious' presence becomes necessary since any remaining hope for injunctive relief must run as to him. Accordingly, our analysis proceeds on the assumption that Pious remains a defendant herein.

7. § 102(6) provides:
  "Upon release of the patient from the institution, the director of the institution shall give written notice of such release to the committee. The committee of a patient upon receiving such notice and a certificate from the director to the effect that such person is presently able adequately to conduct his personal and business affairs, shall render his final accounting, unless waived, to the court which appointed him and shall apply for his discharge as such committee and for an order directing the restoration of the patient's property to such patient."

court) might be forthcoming, the application to convene such court must be denied. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); International Ladies' Garment Workers' Union v. Donnelly Garment Co., 304 U.S. 243, 250, 58 S.Ct. 875, 82 L.Ed. 1316 (1938); Nationwide Mutual Insurance Co. v. Vaage, 265 F.Supp. 556, 562–563 (S.D.N.Y.1967).

### 3. Immunity

▮ In addition to seeking declaratory and injunctive relief, plaintiff seeks to recover money had and received by defendants herein. No claim of any wrongdoing, intentional or negligent, on the part of defendants is alleged in her complaint. We believe this portion of her action is barred by the doctrine of official immunity.[8]

Pious as a quasi-judicial officer responsible to the New York Supreme Court for his conduct as plaintiff's committee,[9] is within the protection of the common law immunities. Plaintiff's express acknowledgement that Pious is charged with no wrongdoing along with the absence of any such allegation in the complaint establish that Pious "played [no] part except that imposed upon him by his official position." See Fanale v. Sheehy, 385 F.2d 866, 868 (2d Cir. 1967). He is accordingly immune from suit for money had and received. See Bradford Audio Corp. v. Pious, 392 F.2d at 72–73.

Drs. Roberts and Miller are also in our opinion immune from suit by virtue of their official immunity. We believe the position of the doctors in this case is much more similar to Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954) than to Jobson v. Henne, 355 F.2d 129 (2d Cir. 1966). See Franklin v. Meredith, 386 F.2d 958, 960–961 and n. 8 (10th Cir. 1967); Bradford Audio Corp. v. Pious, *supra*, 392 F.2d at 72–73. No wrongdoing, carelessness or absence of good faith is alleged. The petitioning of the New York Supreme Court to appoint a committee is expressly provided for by section 102 of the New York Mental Hygiene Law. "Thus the alleged act is not only an act of discretion on the part of the superintendent of the state hospital * * * but is an act expressly provided for and authorized by [New York] law." Franklin v. Meredith, 386 F.2d 958, 961 (10th Cir. 1967). See also, Francis v. Lyman, 216 F.2d 583, 585 (1st Cir. 1954).

### II  *Motion to Intervene*

The motion of plaintiff-applicant Escariz to intervene herein pursuant to Rule 24, F.R.Civ.P., is denied. The papers before us do not indicate that he has a committee outstanding and reflect that he, like Dale, has been released from the institution and declared competent. Since the present action must be dismissed, no basis for intervention exists.

### III  *Conclusion*

For the reasons set forth above, plaintiff's application to convene a three-judge court is denied; defendants' motion to dismiss the complaint is granted; the motion to intervene is denied.

This shall be considered an order; settlement thereof is unnecessary.

---

8. We recognize that the limits of official immunity in the context of the Civil Rights Laws is far from certain. Compare Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Bradford Audio Corp. v. Pious, 392 F.2d 67, 72–73 (2d Cir. 1968); Kletschka v. Driver, 411 F.2d 436, 449 (2d Cir. 1969); Franklin v. Meredith, 386 F.2d 958, 961 (10th Cir. 1967); Birnbaum v. Trussell, 347 F.2d 86, 88–89 (2d Cir. 1965); Jobson v. Henne, 355 F.2d 129 (2d Cir. 1966).

9. See Mental Hygiene Law §§ 106, 110–113. See also, 27 N.Y.Jur. "Incompetent Persons" §§ 65–67.